Case 24-5969 G E v. Williamson Co TN Board of Education. Argument not to exceed 15 minutes per side. Counsel you may proceed for the appellant when ready. Thank you. May it please the court I'm Justin Gilbert. I'm from Chattanooga. I'd like to reserve five minutes for rebuttal. All right. Let me begin by saying thank you for granting oral argument. This is the first time in five years I've been able to have an interaction with a judge about the difference between 504 and the IDEA. I begin with the third circuit case of BSM v. Upper Darby because like a phoenix I think that case has resurrected our position. It clearly establishes that a 504 analysis is independent of an IDEA analysis. My friend on the other side apparently concedes that the analyses must be separate and that the district judge did not do a separate analysis. At least they do not address that issue and that is our first point of error. That is that in fifth and sixth grades Gavin was entitled to an analysis of his needs under 504. He had a very serious case of anxiety. He couldn't make it inside the school doors and he needed what's known as an exposure therapy to help him get inside school. It's not a wheelchair ramp but similar. He needs a service or an aid under 504 to get inside school. He did come to school a decent amount. They say he was absent, he was tardy. We could look at the stats for the whole country. There are a lot of kids that way so it's not that he never came. No, it's not that he never came. I take it there's not an allegation like he got to the front door of the school and threw a fit. No. The anxiety may be the reason that he didn't want to go to school but from the school's point of view he had absences. They tried to address the absences the way they address people's absences. So what did they do wrong? What they did wrong was he needed an exposure therapy plan to get inside the school because the anxiety. How did they know that he needed therapy to get him to get inside quote get inside the school when he'd been inside the school for many of the days maybe most of the days? I think Judge Boggs that may be where our case is the strongest. The strongest child find case I may have ever seen and that is in fifth grade and this is no exaggeration. Every single teacher was worried about his absences. The 504 coordinator was worried about the absences. The principal was worried about the absences. The mother signed releases and spoke of the anxiety and then if that wasn't enough it was referred to a social worker. And so I can't find any case in the country that has that rich of a detail of the concern. When you say about the mother release signed a release about anxiety is that in the record? Is there a document? Signed a release to get his medical records which reflect the anxiety. And so what should have happened Judge Boggs is instead of the social worker making some notes that died in the file they should have just referred it for a 504 meeting to have an evaluation then get those records and then create a plan. And we've proved that an exposure plan is something that this school is accustomed to. It's no one do hardship and by not doing that he continued to accumulate absences and in the following year sixth grade once again all of the teachers were concerned. A skill gap emerged even though he's a smart young man. And so this spiral if you just look at this we have a four-year period here you can just see him continuing to spiral. And so in fifth and sixth grade the 504 plan would have helped him. But by seventh grade without any plan I mean it was a nosedive. I mean he went into a treatment facility called Rogers in seventh grade and he thought that zombies were present at school at home. He couldn't put clothing on and so by seventh grade your honors he was placed on homebound instruction. And at that point I believe this is November of 2019 seventh grade the school began providing specially designed instruction. And that's the key differentiator between a 504 which gets you some related services and the IDEA which gets you specialized instruction and those related services. And so in seventh grade the teachers at homebound were altering his instruction. He's good at art. They would have him draw the assignments and things that were considered violent in the texts from history lessons that were violent from world war lessons that were violent. Even the private tutor had a story about a wasp sting that was too violent. Those were changed so that he wouldn't have to do that. So by definition that is the specially designed instruction guaranteeing him an IEP. Well didn't he he had an IEP in September of that school year of the seventh grade at the beginning of seventh grade he had an IEP. And as I understand your argument is that you're faulting the district for not doing another IEP in November just a couple of months later. No judge he did not have an IEP in September. There was an IEP meeting. That's what I mean. I'm sorry I misspoke. I meant that there was an IEP committee that came together to make a determination ultimately didn't make a decision that he needed an IEP plan. So didn't they do what they were supposed to do? I mean you're saying that it's a child fine violation. They saw some flags. They got together. They held a meeting. They came to a conclusion and as I understand your argument the issue is is that well in November they should have convened another IEP meeting because there were additional issues. Is that what you're arguing? Yes because even the school district acknowledges that his needs seriously increased. But what case law obliges them to do that at that point? I mean that's a really short window. And to be clear I'm not saying they had to do it on November 1st. I'm saying they had five months in which they didn't do it. Well then they did try to circle back you know I think maybe in May and I might be getting these months mixed up but by then I think GE's mom was no longer willing to participate. Is that right? That is incorrect. GE's mom only turned down an IEP meeting after he was already placed at a private school for eighth grade. Prior to that the school district said would you want 504? Well they're obviously providing him specially designed instruction so he needs an IEP. And so just to be very clear. So what you're saying is the school came to her and said we're going to offer you some help under 504 and she didn't have an obligation to say no that's what not what I need. What I need is something under I mean I know she doesn't need to know the statute names but I need something else. Like she has no obligation to do that? To say that I need something else? Yeah. Yes that is what she was saying at this point the child obviously needs an IEP. Yeah. Yes that that is what. And you're saying she requested that. We were already in due process continually requesting that not only requesting it we amended the due process complaint to say. After he comes back from the residential facility. Yes. Yes that's right. Yes. And so and just to finish my point Judge Davis on this time frame I'm not saying that just on November 1 they need to reconvene the IEP meeting. But when he has had inpatient treatment you're delivering homebound and this has gone on for five or six months then yes you do need to grant the child an IEP. Well just from a practical perspective and I understand I hear what you're saying but you know after he came from the residential treatment and he was away for a bit shouldn't the school district have at least a little bit of time to kind of observe and see what's going on to determine whether or not another IEP meeting was necessary? I think that's fair that's why I say there's five or six months here and the district court thought that the school district did not get to speak to the psychiatrist. For some reason the district court thought that the parents blocked the school from speaking to the psychiatrist. But the psychiatrist is a fellow named Dr. McKay. He saw GE 32 times and the mother gave a release so that Williamson County could speak to him and they did speak to him. I'm going to interrupt you only because I see you're running out of time and there's one thing that I do want you to be able to get to before rebuttal which is that in order to establish liability for this child find issue don't you need to engage in the discrimination kind of structure for the analysis which I don't see you really do that in your brief at all. Yes, but let me be very clear the words reasonable accommodation don't don't appear in 504 Title II. The language is that you're denied related aids or services and so we specifically do cite I believe it's 104.33 B2 which is the correct regulation by denying the related aids or services the child did not receive a commensurate education to non-disabled peers which by definition is discrimination. So you're right judge that there's a lot of Title I language that gets thrown around about interactive process and reasonable accommodation but we cited the correct regulation for getting the related aids and services under Title II and that's what our May it please the court I'm Deanna Averitt here on behalf of Appley Williamson County Tennessee Board of Education. First of all judges I would like to address a couple of the facts that counsel mentioned. It is completely untrue that the parents signed any releases for Williamson County to receive medical records during GE's fifth and sixth grade years. In fact the first time that she signed a release was once he was hospitalized in seventh grade and that was to allow him to receive homebound instruction. Actually if you look at the record the school nurse actually on two occasions requested medical records from the mother. One when GE was having some stomach issues and she wanted to know why what was going on that's at DE or record entry 15 4045 as well as there was another time when he had had a concussion after he fell at school and she wanted follow-up from that and again did not get that from the parent that's at record entry 15 4038 to 39. Additionally during fifth grade at one point in time the mom did reference that he was having some anxiety issues at home the school to the school counselor the school counselor emails back and says I didn't know about that how can we help him at school again parent does not respond to that email that's at the record entry 15 3034 to 36 and 5274 to 76. Again at the end of that fifth grade school year when the teachers are concerned about his absences as well as not being able to hear from the mother about what's going on they make a refer to referral to the school social worker to follow up with the parent about what's going on with the absences is there something we can do to help them at school. The school counselor indicated that she was knowledgeable about things going on at home that made her think the family needed help getting him to school that's at docket entry 15 3033 to 34. The school social worker tried to get in touch with GE's mother was unable to get in with her to find out why those absences and tardings were occurring for the times that we didn't have documentation for some of those he definitely had a lot of illnesses in fifth grade that is in the in the record but that is at docket entry 15 2009 74 2009 79 to 81 and 82 and then at 5271 to 73. So judges they did at all times try to find out what was going on try to work with the family additionally the even in the district court's analysis and they document what was going on for those absences and about half of those were due to a lot of illnesses medical notes things like that. I will also say one of the arguments that they have now made on appeal that was not made previously is that that is this exposure therapy is related services. Previously judges in their arguments they had called this exposure therapy at one point time they called it specially designed instruction which is special education services which they now admit is not something they have appealed when the underlying court found that he did not need special education services as of the start of the seventh grade year. That was at their record entry 51 7891 where they refer to that especially design instruction at one point in a prior briefing they refer to exposure therapy as a reasonable accommodation. That was record entry 51 7888 and so now they're taking the position for the first time that that is a related service so we would say they've waived that argument as they did not make that in any of the previous briefings. And then the other thing I would just say judges based on counsel's arguments is that there was no record of a skill gap. They're now arguing that the way he was discriminated by not going forward with a section 504 evaluation is that he was not able to learn as adequately as non-disabled peers. They might make their argument in their brief on page 16. Now they don't provide any citation as to where that comes from what the basis for that is but everything we have in the record shows that he had passing grades in fifth and sixth grade. You can see that at docket entry 15 page 4870 that was fifth grade's grades in sixth grade it is at docket entry 15 6799. His assessment scores also showed that he was at or above grade level. That's a docket entry 15 4505 to 06, 2195 to 96, 2198 and 2200 to 205. Additionally it's very interesting because this case actually started because the mother had requested that he attend a school that he was not zoned for and what for that he was not zoned for it was not his home school within the county. Zoned for zoned yes and so in that initial letter to and this was prior to the due process getting filed her attorney had submitted a letter asserting what she wanted to tell the school district as why he needed to stay in the school that he was in instead of in the one that he would be living in and she says that despite his diagnoses which they were reporting to the school district as part of the reason for him to stay he thrived his sixth grade year at WMS due to those dedicated staff and faculty. Woodland middle school yes yes your honor and so that's at docket entry 15 5464. So now they're trying to argue he wasn't successful in fifth grade which the mother's own assertion at least from the from the briefing or from the statements made and I guess I don't know how much of it is substantiated in the record but then he goes to Curry Ingram and everything seems to shape up as near as least I don't see it refuted is is that any kind of evidence that there was a problem that should have been addressed or is it just you know he happened he had you know children change but at least in terms of a kind of gestalt look at what's going on does that help their side at all or is that just fortuitous? Your honor in my opinion it does not um throughout fifth and sixth grade we saw a kid who had difficulties getting to school at times but he did not have significant mental health issues at school even if mom was seeing some we weren't seeing that at school except for the seventh grade punches the wall is that yes judge and that was after a peer yeah kind of a there was some bullying things that happened you're absolutely right but we didn't see those as like he's experiencing you know significant mental health because after that he did fine the rest of that year but in seventh grade he definitely does have a mental health crisis which unfortunately happens with some some teenagers and clearly it did get to a significant level and we even say even when they did the evaluation in September and found him not eligible we were starting to see a few minor things in the school I think he'd gone to the school counselor a couple of times but it was not to a marked degree that he needed special education at that time shortly thereafter the parents have him committed to a psychiatric hospital and then he gets treatment thereafter and gets released um so in our position judge we would say he got the treatment he needed they worked through that crisis and then he seemed to kind of stabilize back to where he was previously before that um I'll also say judge this whole exposure therapy thing actually came about from Dr. McKay who was his psychiatrist who did he did not even start seeing Dr. McKay until after his release from the hospital in seventh grade so exposure therapy was not even a thing that was discussed said or in any medical record in fifth and sixth grade that was something after he had had that mental health crisis that the psychiatrist was like we need to do something to try to get him back in school and at all points in time the school district was trying to work with them to get him back in school they actually had with Dr. McKay a conference in which they discussed a transition plan back to school Dr. McKay said yes we think he's ready to if you can put supports in we said great we've been trying to have a section 504 meeting with the parents since September and again we offered that again so um looking at the record that at docket entry 15 4,340 to 41 and 5,232 to 33 at all times after that meeting in September in which they found him not eligible for special education the school district repeatedly tried to have section 504 meetings with the mother because they saw something's going on we want to have support and at the same time we were trying to get an evaluation from a clinical psychologist to say what is happening here the only person that had evaluated him from the school was a school psychologist who is not qualified and trained to diagnose mental health issues the family had multiple experts they had a Dr. Freeman who said it was autism they had him evaluated by Dr. Brittany Paul and then they had Dr. McKay and then they had another expert Dr. Erick and everyone was saying something different so as part of that initial evaluation we had asked for that to be a component and that was denied from the very beginning so even when we met in September we didn't have that component and the parent continued to not consent to that all the way until we had I think it was four court orders later saying that the school district had a right to evaluate him and can you just walk through that factually yes again because if I recall correctly and you can correct me if I'm wrong when the IEP committee met in September there was a date on the calendar at least for consideration of the 504 is that right and that got canceled yes judge and so what happened is a couple of weeks prior to that eligibility meeting plaintiff's counsel actually reached out and said hey can we talk about section 504 and we said we're in the process of an evaluation will be critical for determining what he needs so let's hold the IEP meeting if he doesn't qualify under special education then we'll immediately go into a 504 meeting and look at 504 because at this point in time we were starting to see a few of those issues right at the end of that meeting that was a bit that was a very lengthy meeting I think it was like two or three hours the family said hey can we reschedule that and we said okay so that was the first start but then we continued to offer that and were told no up until that point that he was released from the hospital and we talked to Dr. McKay and he recommended him transitioning back to school again they wouldn't participate in a 504 meeting once we finally got that clinical evaluation done then we offered an IEP meeting because now we had that other component to say now we've evaluated the mental health clearly we have records and information from what's happened this school year and we want to get back together at that point in time we were told no we have enrolled him in Curry Ingram Academy and we're no longer interested in that going forward and so looking at that that was so they actually removed him prior to the school district able to complete their evaluation and that's at docket entry 15 5005 48 and 2003 81 to 82 I will also say one of the things that's in I believe it's their reply brief they talk very extensively about this being a rule 35 evaluation while we don't do not dispute that this was someone that if he agreed with you know the opinion of the school we would use it as an expert from the very beginning it was part of the special education evaluation because we needed a clinical psychologist and going back to November of that seventh grade year we have a an order saying that this is not just a rule 35 evaluation the school district has from the very beginning made it a part of their special education process and asked for it and they're entitled to it under both that law as well as under rule 35 and that's at docket entry page 253 to 54 and then again at page 555 they actually appealed that all the way up to the chancery court and state court and again that judge said one you've only appealed it under rule 35 and this is also a special education evaluation but then ultimately that court ended up ruling that the district was also entitled to be able to evaluate under rule 35 as well right um can i ask just a legal question and it's going to be similar to the one that judge davis asked um asked your friend on the other side which is it just has a legal framing matter um with respect to the fifth and sixth grade i feel like your opponent is bringing just a procedural claim just a child find claim and i'm not clear that that's permissible right under this um gc versus owensboro public schools can you even it seems to me that maybe you can't do that you still have to frame it in terms of the four elements of discrimination and i believe you didn't see that in the briefing yes i'll give him a chance to talk about that in rebuttal too but yes judge um and you are absolutely correct and one they did not address that they did not set forth the elephant elements of discrimination but um even if you look in knox county uh versus mq which was a sixth circuit case from 2023 that cited in the briefing um this the same council tried to make a very similar argument so under section 504 regulations there is also provision in addition to you should evaluate or child find there's also provision related um to least restrictive environment and in that case they tried to make that argument that essentially that was separate from the analysis for discrimination and that the court could find that they had discriminated under section 504 just by failing to meet that piece of the regulation and the court specifically says no you have to go through and meet the elements of discrimination as well okay and again that's where i feel like one i don't know that they've even proven that he had a disability at that point in time i'm sorry judge i realized my time's up um are there further questions all right thank you to avoid just rehashing all facts the standard of review clearly matters and the report and recommendation finds in our favor there are sufficient signs to evaluate and there are sufficient signs linking his absences to his mental health we won that and that was adopted by the district judge and so that required these folks to give a 504 meeting give a 504 evaluation and we can call it child fine we can call that procedural but by denying him that there was substantive harm there was discrimination that is he didn't get a plan his and this is during fifth and sixth grade correct correct he didn't get a plan his absences continued his skill gap emerged and he still couldn't always get inside the school and so yes those are the elements of discrimination but the way that 504 writes it is that by failing to give him the related aides and services he didn't have as adequate an education as his peers and so we've cited the correct uh we've decided the correct regulation and judge crenshaw he's an old uh employment lawyer under title one i've had cases with him when he was on the bench and we all use title one we all use that framework judge larson but i'm technically speaking correctly the procedural harm resulted in a substantive harm which is the discrimination under 104 because had he been evaluated he would have gotten an iep is that the chain of reasoning he had been evaluated if the social worker hadn't just dumped this in her file and said oh i think he needs counseling or i think he needs court intervention if she said he needs a 504 meeting and if the multidisciplinary team had come together they would have evaluated him and we have presented expert testimony that for his circumstances the related service to prevent unequal treatment is an exposure plan dr eric was our expert on that and that's the gold star to get him what he needed in fifth and sixth grades what about counsel's point that the exposure plan was not the thing that you said was needed in the court below i don't i don't understand that because we eric was our expert in the in the administrative hearing we never got an evaluation under 504 we never got a 504 meeting so when we go to the hearing we present expert testimony that says had you done it here's what you know he needed at that time and that came from dr eric and had he gotten it all these problems in sixth grade might have been avoided maybe all the tragedies in could have been avoided i'll move to seventh grade briefly because i want to be very clear what's the causal like how tight does the causal connection have to be like maybe if he'd gotten this in fifth grade the problems in seventh grade could have been avoided seems kind of speculative like i what's your bird what do you have to show yeah i think well when we go to the let me be the remedy we're seeking for fifth and sixth grade is reimbursement of the counseling that the that the parents had to get on their own because they couldn't get it through 504 the the social worker said needs counseling but it died in the file the parents got ten or twenty thousand of counseling or the exposure therapy look what we never got the exposure plan didn't get that and but now counseling in fifth and sixth grade are you saying counseling you got in seventh grade or later you needed because it wasn't caught in fifth grade the the parents paid their own in fifth and sixth grade and so they're seeking reimbursement for that um can you speak briefly about what what the exposure plan had he received it how it would have been different i understand that you're saying that it would have been accompanied by some counseling but i i may be a misunderstanding what exposure plan is because i thought it was just getting him into the school which was required during fifth and sixth grade year so what what but didn't he get i think the expectation was that he would actually physically be in the school right instead of a real instead of a wheelchair ramp he needed an exposure plan to get inside the school and he did not get that the parents tried to do their i mean the parents can't do an exposure plan so they tried to you know at least get him counseling and they incurred that money but he never got the exposure plan he never got walking into the door a comfort person inside those sorts of things um quickly on the idea in seventh grade in the answer april 2020 they said he's not eligible for an iep he's not not eligible for an iep they never gave him uh an iep meeting opportunity until august so that period i want to be make sure i'm clear here is like a six or seventh month period when they're talking to the psychiatrist they're providing him homebound instruction they're changing it and he still never got an iep in fact to this day he's never gotten one i see i'm out of time thank you all for the thank you both um appreciate your helpful arguments